# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | |
|---|---|
| TODD HUDSON, as personal representative of the Estate of WILLIAM HUDSON, Deceased, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:16-cv-41 |
| | ) |
| ARCELORMITTAL BURNS HARBOR, LLC, formerly known as ISG BURNS HARBOR, LLC, | ) ) ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on the: (1) Defendant's Motion for Summary Judgment, filed by Defendant, ArcelorMittal Burns Harbor LLC ("ArcelorMittal"), on May 25, 2017 (DE #38); (2) Defendant's Motion to Exclude or Bar Gregory Pestine, filed by Defendant ArcelorMittal on July 10, 2017 (DE #46); and (3) Motion to Strike Plaintiff's Reference to Subsequent Remedial Measures From Its Brief In Opposition to Defendant's Motion for Summary Judgment, filed by Defendant ArcelorMittal on July 10, 2017 (DE #47). For the reasons set forth below, the Motion for Summary Judgment (DE #38) is **GRANTED**; the Motion to Exclude or Bar Gregory Pestine (DE #46) is **DENIED AS MOOT**; and the Motion to Strike Plaintiff's Reference to Subsequent Remedial Measures (DE #47) is **DENIED AS MOOT**. The Clerk is **ORDERED** to **DISMISS** this case **WITH**

**PREJUDICE** and to **CLOSE** this case.

BACKGROUND

This premises liability case revolves around the death of William Hudson, an employee of Tranco Industrial Services, Inc., Defendant ArcelorMittal's snow removal contractor. Hudson died from a fatal heart attack that occurred after his loader/backhoe ran into a raised manhole cover that was buried under 17 inches of snow.

There has been extensive briefing in this case. Defendant moves for summary judgment. (DE #38.) It argues that a landowner is not required to warn its independent contractors about known facts. Additionally, it contends that the alleged hazard (the snow-covered manhole) only existed because of the very condition that Tranco was hired to address on ArcelorMittal's premises; therefore, the hazard was specific to the work Tranco was performing. Finally, Defendant argues that ArcelorMittal did not have "superior knowledge" of the hazard, and therefore cannot be liable for failing to instruct or warn Hudson.

In response, Plaintiff claims that ArcelorMittal had a duty to provide Hudson with a reasonably safe work place and to warn him of the presence and hazard of the buried manhole. Plaintiff also argues that superior knowledge is not required here, because Hudson was not killed by the very condition he was employed to address.

(DE #42.)

Defendant filed a reply brief on July 10, 2017 (DE #45).  It
also filed a sur-reply on September 14, 2017 (DE #57).  In the sur-
reply, ArcelorMittal identified a case recently decided by Judge
Cherry in the Northern District of Indiana, *Strominski v.
ArcelorMittal USA, LLC*, No. 2:15-cv-122-PRC, 2017 WL 3034975 (N.D.
Ind. Jul. 17, 2017), and urges this Court to follow the logic in
*Strominski*.  *Strominski* also involved a plaintiff who was injured
at a different ArcelorMittal facility.  While operating a payloader
and clearing snow, his machine struck a protruding manhole cover
and Strominski was injured.  In *Strominski*, the Court granted
summary judgment in favor of ArcelorMittal. In its sur sur-response
(DE #62), Plaintiff attempts to distinguish *Strominski* by pointing
out that the Daily Work Authorization in this case made
identification of hazards a joint responsibility between Tranco and
ArcelorMittal, in contrast to the Daily Work Authorization in
*Strominski*, which did not contain a requirement for hazards to be
jointly identified by Tranco and ArcelorMittal. Plaintiff also
filed with the Court the Daily Work Authorization to be part of the
record.  (DE #66.)  Defendant counters by maintaining that control
or responsibility of the premises is not a material factor, but
rather the issue of superior knowledge is dispositive.  (DE #65.)

Aside from the motion for summary judgment, ArcelorMittal also
filed a motion to exclude or bar Gregory Pestine, claiming he lacks

the requisite training, education, experience, and knowledge to offer an expert opinion about warnings (DE #46). In response, Plaintiff argues that he is qualified and his expert report comports with Federal Rule of Evidence 702 and *Daubert*. (DE #50.) Defendant filed a reply on August 14, 2017. (DE #52.)

Finally, ArcelorMittal also filed a Motion to Strike Plaintiff's reference to subsequent remedial measures from its brief in opposition to Defendant's motion for summary judgment. (DE #47.) Defendant argues that citing the fact that reflective posts and slag were installed after the accident to mark the manhole covers is inadmissible under Federal Rule of Evidence 407. In opposition, Plaintiff claims that the evidence is relevant in proving control and the feasibility of precautionary measures. (DE #51.) Defendant filed a reply brief on August 14, 2017 (DE #53).

All three motions are fully briefed and ready for adjudication.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 91 L. Ed. 2d 202 (1986).  Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*  To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010).  However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case."  *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).  "[I]nferences relying on mere speculation or conjecture will not suffice."  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted).  If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper.  *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

<u>Undisputed Facts</u>[1]

ArcelorMittal contracted with Tranco to maintain the railroad tracks used to ship products and materials in and out of ArcelorMittal's steel mill in Burns Harbor, Indiana, including plowing snow. Ryan Hopkins, a general foreman of Tranco, was known as the "snow commander." As the snow commander, Hopkins took care of the thoroughfares, roads, and parking lots. Another Tranco foreman, Juan Luna, took care of the railroad tracks and switches.

Tranco performed work on ArcelorMittal's premises every day, and had an on-site trailer on ArcelorMittal's site. Tranco purchased its own equipment and determined which equipment should be used by its employees, including the payloader Hudson was operating on the day in question. Tranco monitored the weather patterns to anticipate the scope of its snowplowing work, and then Hopkins (the "snow commander"), designated personnel to plow specific areas. Each snow plowing shift had to be authorized by a written work authorization from ArcelorMittal, and ArcelorMittal did give Tranco some direction on the work they needed done. (Hopkins Dep. at 111; Beck Dep. at 50.) Ultimately, staffing a job was authorized and approved by ArcelorMittal. Moreover, the Daily Work Authorization form specifically states that "[h]azards must be

---

[1] For the sake of brevity, the Court has not included the record citations for each undisputed fact. However, it has verified each in the record, and has noted the citation where facts are disputed.

jointly identified and reviewed by ArcelorMittal representative and contractor representative." (DE #42-14.)

The possibility of a plow striking a snow-covered object is a hazard that is present in Tranco's snow removing work. Tranco provided training to its employees about snow removal, including how to operate in snow at safe speeds and how to avoid contact with covered obstructions in the snow. Tranco also held safety meetings a couple times per month, and one meeting addressed "Cold Weather Hazards" and included specific training on taking caution near stationary objects while plowing snow.

Hudson was a heavy equipment operator and at the time of the accident, had been employed by Tranco as an operator for at least seven years. Prior to working for Tranco, Hudson had worked other jobs on ArcelorMittal's premises for many years. Hudson was described as one of Tranco's best operators and Hopkins reported that Hudson knew the whole mill. (Hopkins Dep. at 14-15,47-48; Beck Dep. at 46-47.) Hudson typically worked five to seven shifts a week, starting at 7:00 a.m. In the weeks before the incident, he was working twelve to sixteen hour shifts, including at night, to address the snowfall.

On the day of the incident, about 17 inches of snow had accumulated on ArcelorMittal's premises. At about 7:30 p.m. on January 9, 2014, Hopkins instructed Hudson to clear snow from the area to the east of the 110 plate mill next to the railroad switch.

Hudson had plowed the area in question many times over the course of many years before the incident, including on days when there was a substantial amount of snow. While the parties dispute whether this area was an authorized roadway or not, they do agree that Tranco, ArcelorMittal, and other independent contractor employees, used it as access to the rail switches and the railcars.

The actual incident was not witnessed by anyone. However, Hopkins told Tim Beck that Hudson hit something, and he told Pete Kinsler that Hudson's machine hit a manhole. Hudson's machine stopped abruptly within an inch of a buried, raised manhole cover, which is to the north of switch number 784. When discovered, the backhoe had a broken windshield, it was found running, in reverse, with the backup alarm on, and the bucket was down and full of snow. The parties do not dispute that Hudson struck the raised manhole cover platform with his payloader, hit the windshield, and died of a fatal heart attack on the scene.

Regarding the manhole cover, it had been present on the property for approximately 40-50 years. It is used to provide access to an underground pipe system. The manhole is situated within a concrete platform that is approximately 4 or 5 inches above grade. While there is some disagreement about how many other vaults or platforms are on ArcelorMittal's premises, ArcelorMittal did a survey after the incident and located 65 valve pits and 12 electrical boxes on the property. (James Dep. at 25.)

8

There is evidence in the record showing that Hudson, his employer, his supervisor, and his co-workers all knew of the existence of the concrete platform and raised manhole cover to the north of switch 784.  Indeed, Hopkins testified that Hudson had removed snow in that area on numerous occasions and that Hudson knew of the existence of the manhole cover.  (Hopkins Dep. at 48-49.) Plaintiff argues that while they might have been aware of where the manhole was, it was totally invisible on the night in question because it was buried under 17 inches of snow.  (DE #42 at 10.)

Hopkins testified that, prior to the accident at issue, he did not have any knowledge that any Tranco operator ever struck the manhole in question during snow removal.  (Hopkins Dep. at 44, 49.) However, there is testimony from Edward G. Reinke, a Tranco mechanic, who testified in his deposition about "a couple of times or an incident where it happened," meaning the snowplow came into contact with the manhole covers, and someone from Tranco would have told someone from ArcelorMittal.  (DE #42-9 at 40, 74-75.)  Hopkins did not consider the manhole cover a hazard, even with 17 inches of snow.  (Hopkins Dep. at 45.)

A few days after the accident, Pete Kinsler of Tranco, with ArcelorMittal's authorization, brought the raised manhole up to grade.  ArcelorMittal also conducted a survey, and marked with raised reflective markers the manhole at issue and other manholes.

9

Gregory Pestine, Plaintiff's retained expert, opines that the raised manhole, which was within a roadway where vehicles and snow removal equipment were expected to travel, was an "unreasonably dangerous condition because it was unmarked and it was not identifiable under 17 inches of snow." (Pestine Expert Report, Ex. R, at ¶ B.2.)

Plaintiff argues that, at a minimum, there are disputed facts and allegations regarding control of the area at issue, and this should preclude summary judgment.

I.   Premises Liability

The parties agree that the complaint sounds in negligence, and this case is based upon allegations of premises liability. The Supreme Court of Indiana has specified, "[a]s a general rule, a property owner has no duty to furnish the employees of an independent contractor a safe place to work, at least as that duty is imposed on employers." *PSI Energy, Inc. v. Roberts*, 829 N.E.2d 943, 957 (Ind. 2005) (abrogated on other grounds). However, the property owner must maintain the property "in reasonably safe condition for business invitees including independent contractors and their employees." *Id.* Yet a "landowner ordinarily has no liability to an independent contractor or the contractor's employees for injuries sustained while addressing a condition as to which the landowner has no superior knowledge." *Id.* at 961.

"[F]acts showing only that a landowner knows of a condition involving a risk of harm to an invitee, but could reasonably expect the invitee to discover, realize, and avoid such risk, may be insufficient to prove breach of the duty." *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990).

Indiana has adopted the Restatement (Second) of Torts formulation of landowners' liability to workers on the premises, which provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Restatement (Second) of Torts*, § 343. Further, section 343A(1) should be read in conjunction with § 343 and it states that:

> a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Restatement (Second) of Torts*, § 343A(1).

Magistrate Judge Paul R. Cherry recently decided a very similar case, involving a snow plow accident at a different

11

ArcelorMittal plant. *Strominkski v. Arcelormittal USA, LLC*, 2:15-cv-122-PRC, 2017 WL 3034975 (N.D. Ind. July 17, 2017). In that case, an employee of Tranco was injured when he struck a raised manhole cover while plowing snow. Judge Cherry recapped the Restatement law as subjecting a landowner to liabilities for injuries to invitees caused by a condition on the land only if the landowner meets three requirements:

> (1) the landowner "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm" to the invitee; (2) the landowner should expect that the invitee "will not discover or realize the danger, or will fail to protect themselves against it;" and (3) the landowner "fails to exercise reasonable care to protect [the invitee] against the danger."

*Strominski, 2017 WL 3034975, at *4* (quoting *Restatement (Second) of Torts* § 343); *and citing Smith v. Baxter*, 796 N.E.2d 242, 244 (Ind. 2003).

In *Strominski*, ArcelorMittal argued that it could not be held liable for the injuries because the employee was injured while performing the specialized work that Tranco was hired to do, and because ArcelorMittal had no superior knowledge of the raised manhole cover. ArcelorMittal makes the identical arguments in this case.

A landowner cannot be liable where the alleged liability relates to a hazard associated with the condition or activity that is the very reason for the independent contractor's presence on the

property.  *PSI Energy, Inc.*, 829 N.E.2d at 958. Plaintiff argues

that *PSI Energy* requires a showing that a landowner has superior

knowledge of the dangerous conditions on the premises *only* when an

employee of the independent contractor is injured by the very

condition he was employed to address – and in this case, he argues

Hudson was *not* killed by the very condition he was employed to

address. (DE #42 at 16.)  Plaintiff argues that Hudson "was killed

due to an unreasonably dangerous condition on the premises, not by

the snow."  (DE #42 at 17.)

In arguing Hudson was not injured by the condition he was

employed to address, Plaintiff relies heavily on *Myers v. Bremen

Casting, Inc.*, 61 N.E.3d 1205 (Ind. Ct. App. 2016). In *Myers*, the

plaintiff was an electrician who contracted mesothelioma after

exposure to asbestos while working on defendant's property.  The

court described Myers' work as follows:

> [Myers'] duties generally included installing and
> maintaining   wire,   conduit,   light   fixtures,
> transformers, junction boxes, and circuit breakers.
> In carrying out these duties, [Myers] occasionally
> worked near asbestos insulation and with products
> containing asbestos. [Myers] was not warned of the
> dangers   associated   with   asbestos   exposure.   In
> addition,   he   was   neither   trained   nor   hired   to
> handle asbestos, and he did not wear any protective
> gear.

*Id.* at 1210.  In *Myers*, the Court found "the Defendants have not

designated sufficient evidence to establish [Myers] was injured by

the very condition he was employed to address" and there was a

question of fact regarding whether the plaintiff was injured by the

condition he was hired to address, because it was undisputed that the plaintiff had no specialized knowledge about asbestos and was not trained about how to handle it or avoid its associated risks. *Id.* at 1215-16. In stark contrast, Hudson worked with the potentially hazardous snow daily (not occasionally like *Myers*), and he was trained by Tranco regarding the potential risks of impacting snow-covered objects, and taught how to avoid them. Tranco also provided the equipment for Hudson. It is clear that Hudson died while doing the very work Tranco was contracted to do, and while addressing the condition (the snow) that allegedly caused the raised platform to be hidden and cause a risk.

*Strominski* addressed the identical argument, and distinguished *Myers* too:

> The relevant condition on the land that Tranco was hired to address was the snow cover. Unlike in *Myers*, there is sufficient evidence before the Court indicating that encountering objects under the snow is inherent in snow plowing, that Strominski knew to prepare for this possibility, and that Tranco instructed Strominski to take caution when plowing due to the chance of objects being buried under the snow. . . . Tranco and Strominski both admittedly knew of the potential for objects to be buried under the snow cover and to allow for this possibility in plowing snow. Strominski was injured by the condition that he was hired to address.

*Strominski*, 2017 WL 3034975, at *5. This Court concurs with Judge Cherry's reasoning, and finds that Hudson's death was the result of the condition he was hired to address.

Plaintiff also argues that summary judgment is improper

14

because it has raised a question of fact as to whether

ArcelorMittal had "superior knowledge" of the raised manhole cover.

(DE #42 at 18.)  Specifically, Plaintiff points to the testimony of

ArcelorMittal's Manager Carl Pfiefer, who Plaintiff alleges

testified "even before Hudson's death he intended to have the

manholes marked in some way so that they could be visible during

snow events, but did not get around to it until after the

fatality."  (DE #42 at 18.)  However, when viewed in the full

context of his deposition, Pfeifer testified:

> Even before this incident, it had come to my
> attention - - it had come to my attention that
> there were times when manholes and valve pits
> were difficult to located on the property;
> particularly in the winter when there was more
> than a couple of inches of snow.  And under
> those       circumstance[s]       those       were
> circumstance[s] where the Air, Gas & Water
> folks would have to get at these locations to
> shut off a valve or repair a leak or whatever.
> And it had taken some time to locate those. .
> . . sometime in the first quarter of '14, I
> asked Mike to have these valve pit covers and
> manhole covers and et cetera located and
> marked; primarily so our people could see them
> and find them more easily and execute a repair
> or, whatever they are trying to do, more
> easily.

(Pfeifer Dep. at 45-46.)   In other words, the main reason

ArcelorMittal considered marking the manholes and valve pits prior

to the accident was to facilitate access to them for repairs.

Pfeifer also testified that elevated manhole covers and valve pits

are very noticeable, even when covered by reasonable amounts of

snow, and that he believed a manhole platform only would pose a

15

hazard if someone is not intimately familiar with them. *Id.* In
this case, Hopkins (Tranco's snow commander), testified that Hudson
was very experienced and familiar with the plant, Hudson had
removed snow there many times over the course of years, and that
Hudson knew of the existence of the manhole cover. (Hudson Dep. at
46-49.) "A duty to warn is predicated on the understanding that
individuals who have superior knowledge of the dangers posed by a
hazard must warn those who lack similar knowledge. When an
individual is already aware of the danger, a warning is not
necessary." *Carter v. American Oil Co.*, 139 F.3d 1158, 1164 (7th
Cir. 1998).

Regarding superior knowledge, Judge Cherry found in
*Strominski*:

> [N]o warning from ArcelorMittal to Tranco or
> Strominski was necessary. Tranco and Strominkski
> were invited onto the property to plow snow, and
> both Tranco and Strominski had years of experience
> plowing snow. The evidence shows that Tranco
> plowed the area at issue here hundreds, or perhaps
> thousands, of times before the event at issue. The
> pathway where the raised manhole cover is located
> is not a main roadway for ArcelorMittal. The snow
> cover was easily observable, so ArcelorMittal was
> entitled to expect Tranco and Strominski to take
> due precaution to protect themselves against the
> dangers presented in plowing snow, which Tranco and
> Strominski both testified includes the potential of
> striking objects buried beneath the snow cover.
> ArcelorMittal did not have superior knowledge of
> the raised manhole's condition and could not have
> told Tranco anything about it that Tranco did not
> already know.

*Strominski*, 2017 WL 3034975, at *6.

Similarly, the Tranco employees operated in this area daily and at the time of the accident, Hudson had plowed snow on this site for at least seven years. There is evidence in the record that Tranco was aware of the risks posed by striking snow-covered objects, and that Tranco conducted training specifically about how to avoid contact with covered obstructions in the snow. Tranco was a specialized contractor that had specific knowledge about the risks inherent in plowing work. There are no facts in the record suggesting that ArcelorMittal was involved in determining how to safely conduct snowplowing on its premises. With regard to the specific manhole at issue in this case, Plaintiff cites testimony that ArcelorMittal "didn't even know [the platform] was there." (DE #42 at 10.) Tranco's vice president testified about the investigation on the night of the occurrence and answered, "[Hopkins] said that he thought there was a manhole there, yeah. . . . We were aware that there was something there." (Beck Dep. at 83.) As such, this Court concurs with the analysis of Judge Cherry and also finds that ArcelorMittal does not have superior knowledge in this case.

Plaintiff attempts to distinguish *Strominski*, relying on the Daily Work Authorization Form. (DE #62-4.) It argues there is a "stark difference" between *Strominski* and this case because the Daily Work Authorization Form for the night of Hudson's death required the identification of hazards regarding snow plowing as a

17

joint responsibility between ArcelorMittal and Tranco. (*Id.* at 1;
DE #42-14.) The work authorization in *Strominski* did not require
ArcelorMittal to jointly identify the hazards with Strominski's
employer. (DE #66-2.) It is true that the Daily Work
Authorization Form in Hudson's case includes the phrase "hazards
must be jointly identified and reviewed by ArcelorMittal
representative and contractor representative," while the *Strominski*
authorization does not include the same language. This issue,
which seems like one of control, was not an issue dealt with by
*Strominski*. Rather, recall that the *Strominski* Court recited that
a landowner "ordinarily has no liability to an independent
contractor . . . for injuries sustained while addressing a
condition as to which the landowner has no superior knowledge."
*Strominski*, 2017 WL 3034975, at *5 (quoting *PSI Energy, Inc.*, 829
N.E.2d at 961.) A joint responsibility for identifying hazards
does not necessarily mean that ArcelorMittal had superior knowledge
of the hazard in question. Moreover, "[f]acts showing only that
a landowner knows of a condition involving a risk of harm to an
invitee, but could reasonably expect the invitee to discover,
realize, and avoid such risk, may be insufficient to prove breach
of the duty." *Id.* (quoting *Douglass*, 549 N.E.2d at 370).

In this case, there is no evidence in the record that
ArcelorMittal had a superior knowledge of the manhole cover or
potential hazard associated with it. Instead, there is evidence

that Tranco could have reasonably discovered and avoided any such risk.  As Judge Cherry said, "ArcelorMittal did not have superior knowledge of the raised manhole's condition and could not have told Tranco anything about it that Tranco did not already know." *Strominski*, 2017 WL 3034975, at \*6.  The same is true in this case. As such, this Court also reaches the "single inference" that ArcelorMittal did not breach a duty to Hudson. *Id.*

Finally, the Court notes that consideration of the subsequent remedial measures and the testimony by Plaintiff's expert, Gregory Pestine, does not alter the superior knowledge analysis set forth in *Strominski* and followed by this Court.  As such, the motions to exclude and strike are denied as moot.


CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (DE #38) is **GRANTED**; the Motion to Exclude or Bar Gregory Pestine (DE #46) is **DENIED AS MOOT**; and the Motion to Strike Plaintiff's Reference to Subsequent Remedial Measures (DE #47) is **DENIED AS MOOT**.  The Clerk is **ORDERED** to **DISMISS** this case **WITH PREJUDICE** and to **CLOSE** this case.

**DATED: January 9, 2018**              /s/ RUDY LOZANO, Judge
                                        **United States District Court**